**RECORD NO. 14-1660 (L)**
**Cross-Appeal No. 14-1735**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

JASON KLEIN, individually,
on behalf of all others similarly situated,

*Plaintiff-Appellant,*

v.

VERIZON COMMUNICATIONS, INC., VERIZON ONLINE LLC,
AND VERIZON MARYLAND,

*Defendants-Appellees.*

---

PRINCIPAL AND RESPONSE BRIEF OF
DEFENDANTS-APPELLEES

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA**

---

Sean F. Murphy
MCGUIREWOODS LLP
1750 Tysons Boulevard
Suite 1800
Tysons Corner, Virginia 22102-4215
Phone: 703.712.5487
Fax: 703.712.5243
E-mail: sfmurphy@mcguirewoods.com

Joshua D. Davey
MCGUIREWOODS LLP
201 N. Tryon Street
Suite 3000
Charlotte, North Carolina 28202
Phone: 704.343.2167
Fax: 704.805.5019
E-mail: jdavey@mcguirewoods.com

Hojoon Hwang
Laura K. Lin
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105
Telephone:   415.512.4000
Facsimile:    415.512.4077
Email: Hojoon.Hwang@mto.com
Email: Laura.Lin@mto.com

Counsel for Verizon Communications, Inc., Verizon Online LLC, Verizon Online-Maryland LLC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. <u>14-1660</u>    Caption: <u>Jason Klein v. Verizon Communications Inc., et al</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Verizon Communications Inc.</u>
(name of party/amicus)

_____

who is _____<u>Appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO

2.   Does party/amicus have any parent corporations?                ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                ☐ YES ☑ NO
     If yes, identify all such owners:

     No publicly held corporation or other public entity owns 10% of more of the stock of Verizon Communications Inc. However, the entities identified in Exhibit A are subsidiaries or affiliates of Verizon Communications Inc. that have or may have securities in the hands of the public.

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Joshua D. Davey            Date: 7/18/2014

Counsel for: Appellees

# CERTIFICATE OF SERVICE
**************************

I certify that on _____7/18/2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Raymond Charles Fay
Zachary William Haupt Best
MEHRI & SKALET, PLLC
Suite 300
1250 Connecticut Avenue, NW
Washington, DC 20036

Judy L. Feinberg
JUDY L. FEINBERG PC
9241 Cambridge Manor Court
Potomac, MD 20854

/s/ Joshua D. Davey                    7/18/2014
(signature)                            (date)

- 2 -

No. 14-1660                                                    **Exhibit A**

*Klein v. Verizon Communications Inc. et al.*

The following are subsidiaries or affiliates of Verizon Communications Inc., a publicly held corporate, that have or may have securities in the hands of the public:

**Verizon Delaware LLC**
[formerly known as "Verizon Delaware Inc.", "Bell Atlantic - Delaware, Inc. " and "The Diamond State Telephone Company"]

**Verizon Maryland LLC**
[formerly known as "Verizon Maryland Merge Co." – "Verizon Maryland Inc. merged into Verizon Maryland Merge Co."]

**Verizon New Jersey Inc.**
[formerly known as "Bell Atlantic - New Jersey, Inc." and "New Jersey Bell Telephone Company"]

**Verizon Pennsylvania LLC**
[formerly known as "Verizon Pennsylvania Co.**"** – "Verizon Pennsylvania Inc. merged into Verizon Pennsylvania Co."]

**Verizon Virginia LLC**
[formerly known as "Verizon Virginia Inc.", "Bell Atlantic - Virginia, Inc.**"** and "The Chesapeake and Potomac Telephone Company of Virginia"]

**Verizon New York Inc.**
[formerly known as "New York Telephone Company"]

**Verizon New England Inc.**
[formerly known as "New England Telephone and Telegraph Company"]

**Verizon California Inc.**
[formerly known as "GTE California Incorporated"]

**Verizon Florida LLC**
[formerly known as "Verizon Florida Inc." and "GTE Florida Incorporated"]

**GTE Corporation**

**GTE Southwest Incorporated (dba Verizon Southwest)**

**Cellco Partnership (dba Verizon Wireless)**

**Alltel Corporation**

**Verizon Wireless Capital LLC**

**Verizon Americas Inc. (formerly known as Vodafone Americas Inc.)**

      Verizon also owns non-controlling minority interests in various companies that have publicly held securities.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1660__    Caption: __Jason Klein v. Verizon Communications Inc., et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Verizon Online LLC__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☑ YES ☐ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
    The following corporations are parent, grandparent, and great-grandparent corporations of Verizon Online LLC:  GTE Wireless Incorporated, GTE Corporation, NYNEX LLC, Verizon Ventures LLC and Verizon Communications Inc.

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

10/28/2013 SCC                         - 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: __/s/ Joshua D. Davey_____     Date: _____7/18/2014_____

Counsel for: __Appellees_____

## CERTIFICATE OF SERVICE
****************************

I certify that on _____7/18/2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Raymond Charles Fay
Zachary William Haupt Best
MEHRI & SKALET, PLLC
Suite 300
1250 Connecticut Avenue, NW
Washington, DC 20036

Judy L. Feinberg
JUDY L. FEINBERG PC
9241 Cambridge Manor Court
Potomac, MD 20854

__/s/ Joshua D. Davey_____
(signature)

_____7/18/2014_____
(date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1660__    Caption: _Jason Klein v. Verizon Communications Inc., et al_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Verizon Maryland LLC_
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      Verizon Maryland LLC is a wholly owned, direct subsidiary of Verizon Communications Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: __/s/ Joshua D. Davey_____    Date: _____7/18/2014_____

Counsel for: __Appellees_____

## CERTIFICATE OF SERVICE
****************************

I certify that on _____7/18/2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Raymond Charles Fay
Zachary William Haupt Best
MEHRI & SKALET, PLLC
Suite 300
1250 Connecticut Avenue, NW
Washington, DC 20036

Judy L. Feinberg
JUDY L. FEINBERG PC
9241 Cambridge Manor Court
Potomac, MD 20854

__/s/ Joshua D. Davey_____
(signature)

_____7/18/2014_____
(date)

- 2 -

# TABLE OF CONTENTS

**Page(s)**

Jurisdictional Statement ................................................................................1

Statement of the Issues Presented for Review ...........................................2

Statement of the Case....................................................................................3

    A.     Overview of the Case .....................................................3

    B.     Klein's Service from Verizon .......................................5

    C.     Klein's Agreements with Verizon.................................7

    D.     The Arbitration Provision in the 2012 TOS .................8

    E.     Klein's Allegations .....................................................10

    F.     Verizon's Offer of Judgment......................................10

Summary of Argument.................................................................................11

Argument......................................................................................................14

I.     Standard of Review...........................................................................14

II.    Klein's Claim Is Moot And Should Have Been Dismissed for Lack of Subject Matter Jurisdiction .............................................................15

    1.     Klein Lacks Any Cognizable Interest In This Case..................15

    2.     Klein is Not Entitled to Litigate a Moot Claim Simply Because He Purports to Represent, But Has Not Moved to Certify, a Class....................................................................17

III.   Maryland Law Controls the Validity of the Parties' Contract Modification .....................................................................................24

    A.     Verizon and Klein Entered the 2012 Contract Modification in Maryland, Rendering Maryland Law Applicable ..............................................24

    B.     Klein's Effort to Apply the Choice of Law Provision Found in the Parties' Prior Agreements Is Unavailing.......................................25

i

C.     Klein's Contention that the District Court Improperly Applied the Presumption in Favor of Arbitration is Unfounded ......................27

IV.    The Parties Entered a Valid Contract Modification .......................................28

A.     Klein Agreed to the Proposed Contract Modification By Continuing to Use Verizon's Services After Receiving Notice of the New Terms .........................................28

B.     The "Internet Context" Emphasized By Klein is Immaterial ............32

V.    The Arbitration Agreement Applies to this Dispute ......................................35

A.     The Parties' Agreement to Arbitrate "Any Dispute" Relating to "Service" Encompasses this Dispute Relating to Verizon's Service .........................................35

B.     Klein's Arguments Against Enforcement of the Arbitration Provision Are Unfounded.....................................................39

1.     The 2010 Agreement Does Not Limit the Retroactive Application of the Arbitration Agreement................................39

2.     Cases Limiting the Retroactivity of Arbitration Agreements in Stop-And-Go Relationships Are Not Applicable Here ......................................................40

3.     The Parties' Arbitration Agreement Is Not Illusory .................42

4.     The Arbitration Provision Falls Within the Scope of Modifications Contemplated By the Parties' Prior Agreements ..............................................................48

5.     Klein's Brief Service Interruption Did Not Terminate the Parties' Agreement as Klein Contends ......................................50

6.     Klein's Effort to Limit the Arbitration Provision to "This Agreement" Ignores the Plain Language of the Arbitration Provision ..........................................51

Conclusion ...............................................................53

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*American Recovery Corp. v. Computerized Thermal Imaging, Inc.*,
96 F.3d 88 (4th Cir. 1996) ..................................................................36

*American General Life & Accident Insurance Co. v. Wood*,
429 F.3d 83 (4th Cir. 2005) ...........................................................43, 44

*AT&T Mobility, LLC. v. Concepcion*,
131 S.Ct. 1740 ..................................................................................47

*AT&T Techs. v. Communications Workers of Am.*,
475 U.S. 643 (1986)...........................................................................38

*AvePoint, Inc. v. Power Tools, Inc.*.
981 F. Supp. 2d 496 (W.D. Va. 2013) ..........................................33, 34

*Barker v. Golf U.S.A., Inc.*,
154 F.3d 788 (8th Cir. 1998) ..............................................................46

*Belke v. Merrill Lynch, Pierce, Fenner & Smith*,
693 F.2d 1023 (11th Cir. 1982) ..........................................................37

*Cara's Notions, Inc. v. Hallmark Cards, Inc.*,
140 F.3d 566 (4th Cir. 1998) .........................................................14, 36

*Carey v. 24 Hour Fitness, USA, Inc.*,
669 F.3d 202 (5th Cir. 2008) ..............................................................44

*Clay v. Miller*,
626 F.2d 345 (4th Cir. 1980) ..............................................................19

*Coghlan v. South Carolina Railroad Co.*,
142 U.S. 101 (1891)...................................................................12, 24, 27

*Colgan Air, Inc. v. Raytheon Aircraft Co.*,
507 F.3d 270 (4th Cir. 2007) ..............................................................24

*CoStar Realty Information, Inc. v. Field*,
612 F. Supp. 2d 660 (D. Md. 2009)................................................28, 33

*Cvent, Inc. v. Eventbrite, Inc.*,
   739 F. Supp. 2d. 927 (E.D. Va. 2010) ...........................................................33, 34

*Damasco v. Clearwire Corp.*,
   662 F.3d 891 (7th Cir. 2011) ......................................................................21, 22

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)...........................................................................................37

*Deposit Guaranty National Bank v. Roper*,
   445 U.S. 326 (1980)......................................................................................23, 24

*Dialysis Access Center, LLC v. RMS Lifeline, Inc.*,
   638 F.3d 367 (1st Cir. 2011)..............................................................................53

*Doctor's Associates, Inc. v. Distajo*,
   66 F.3d 438 (2d Cir. 1995) ................................................................................46

*Filho v. Safra Nat. Bank of N.Y.*,
   2011 WL 2118729 (S.D.N.Y. May 25, 2011) ....................................................49

*Franco v. Allied Interstate LLC*,
   2014 WL 1329169 (S.D.N.Y. April 2, 2014) ...............................................22, 23

*Genesis Healthcare Corp. v. Symczyk*,
   133 S. Ct. 1523 (2013)................................................................................*passim*

*Gomez v. Campbell-Ewald Co.*,
   --- F.3d ----, 2014 WL 4654478 (9th Cir. Sept. 19, 2014) .................................22

*Harold H. Higgins Realty, Inc. v. FNC, Inc.*,
   575 F. Supp. 2d. 696 (D. Md. 2008).................................................................26

*Hendrick v. Brown & Root, Inc.*,
   50 F. Supp. 2d 527 (E.D. Va. 1999) .............................................................40, 41

*Hill v. PeopleSoft USA, Inc.*,
   412 F.3d 540 (4th Cir. 2005) ............................................................................43

*Hooters of America v. Phillips*,
   173 F.3d 933 (4th Cir. 1999) ......................................................................44, 45

*In re Verisign, Inc., Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) .............................................................37

*INS v. St. Cyr*,
    533 U.S. 289 (2001) .......................................................................................40

*International Brotherhood of Teamsters v. Willis Corroon Corp.*,
    802 A.2d 1050 (Md. 2002) .............................................................................30

*Keco Indus., Inc. v. ACF Indus., Inc.*,
    316 F.2d 513 (4th Cir. 1963) ..........................................................................24

*Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*,
    974 F. Supp. 2d 856 (D. Md. 2013) ................................................................22

*Kenney v. Independent Order of Foresters*,
    744 F.3d 901 (4th Cir. 2014) ..........................................................................14

*Kraft Real Estate Investment, LLC v. HomeAway.com, Inc.*,
    2012 WL 220271 (D.S.C. Jan. 24, 2012) ........................................................34

*Levin v. Alms & Assocs., Inc.*,
    634 F.3d 260 (4th Cir. 2011) ...................................................................*passim*

*Liberty Mutual Insurance Co. v. Triangle Industries, Inc.*,
    957 F.2d 1153 (4th Cir. 1992) ........................................................................52

*Long v. Silver*,
    248 F.3d 309 (4th Cir. 2001) ..........................................................................35

*Lucero v. Bureau of Collection Recovery, Inc.*,
    639 F.3d 1239 (10th Cir. 2011) ......................................................................17

*Masters v. Wells Fargo Bank S. Central, N.A.*,
    2013 WL 3713492 (W.D. Tex. 2013) ..............................................................22

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
    460 U.S. 1 (1983) ......................................................................................38, 53

*Myers v. MBNA America*,
    2001 WL 965063 (D. Mont. Mar. 20, 2001) .........................................31, 32, 48

*Nanosolutions, LLC v. Prajza*,
  793 F. Supp. 2d 46 (D.D.C. 2011) ................................................37, 51

*Peabody Holding Co., LLC v. United Mine Workers of America,*
  *International Union*,
  665 F.3d 96 (4th Cir. 2012) ................................................13, 38, 53

*Perry v. Fleetboston Financial Corp.*,
  2004 WL 1508518 (E.D. Pa. July 6, 2004) ................................26, 48

*Physicians Comm. for Responsible Medicine v. General Mills, Inc.*,
  283 F. App'x 139 (4th Cir. 2008) ................................................16

*Pitts v. Terrible Herbst, Inc.*,
  653 F.3d 1081 (9th Cir. 2011) ................................................17

*Pro Football Inc. v. Paul*,
  569 S.E.2d 66 (Va. Ct. App. 2002) ................................................12, 25

*Rand v. Monsanto Co.*,
  926 F.2d 596 (7th Cir. 1991) ................................................16

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
  945 F.2d 765 (4th Cir. 1991) ................................................15

*Robinson v. Equifax Information Services, LLC*,
  560 F.3d 235 (4th Cir. 2009) ................................................31, 42

*Sandoz v. Cingular Wireless LLC*,
  553 F.3d 913 (5th Cir. 2008) ................................................17, 22

*Schnabel v. Trilegiant Corp.*,
  697 F.3d 110 (2d Cir. 2012) ................................................33

*Simmons v. United Mortage & Loan Investment, LLC*,
  634 F.3d 754 (4th Cir. 2011) ................................................11, 15

*Sosna v. Iowa*,
  419 U.S. 393 (1975)................................................19, 20

*Specht v. Netscape Comms. Corp.*,
  306 F.3d 17 (2d Cir. 2002) ................................................32, 33

*Spencer v. Kemma*,
523 U.S. 1 (1998).............................................................................15

*Sydnor v. Conseco Financial Servicing Corp.*,
252 F.3d 302 (4th Cir. 2001) .....................................................28, 29

*Symczyk v. Genesis Health Care Corp.*,
656 F.3d 189 (3d Cir. 2011) .............................................................17

*TradeComet.com LLC v. Google, Inc.*,
435 F. App'x 31 (2d Cir. 2011) .........................................................37

*United States Parole Comm'n v. Geraghty*,
445 U.S. 388 (1980)..........................................................................20

*United States v. Balint*,
201 F.3d 928 (7th Cir. 2000) ............................................................52

*Verizon Advanced Data, Inc. v. Frognet, Inc.*,
2006 WL 2373265 (S.D. Ohio Aug. 14, 2006) ....................40, 41, 50

*Warren v. Sessoms & Rogers, P.A.*,
676 F.3d 365 (4th Cir. 2012) ........................................10, 14, 15, 16

*Weiss v. Regal Collections*,
385 F.3d 337 (3d Cir. 2004) .............................................................17

*Wilson Electrical Contractors, Inc. v. Minnotte Contracting Corp.*,
878 F.2d 167 (6th Cir. 1989) ............................................................46

*Zimmerman v. Bell*,
800 F.2d 386 (4th Cir. 1986) ......................................................16, 19

*Zink v. Merrill Lynch Pierce Fenner & Smith*,
13 F.3d 330 (10th Cir. 1993) .............................................36, 37, 51

**STATE CASES**

*Badie v. Bank of America*,
67 Cal. App. 4th 779 (1998) .......................................................48, 49

*DIRECTV, Inc. v. Mattingly*,
829 A.2d 626 (Md. 2003) .........................................................28, 29, 30

*Dominion National Bank v. Sundowner Joint Venture*,
   436 A.2d 501 (Md. Ct. Spec. App. 1981).............................................................28

*Freedman v. Comcast Corp.*,
   988 A.2d 68 (Md. Ct. Spec. App. 2010)......................................................29, 30

*Hovnanian Land Investment Group., LLC v. Annapolis Towne Center at
   Parole, LLC*,
   25 A.3d 967 (Md. App. 2011) .................................................................13, 28

*In re AdvancePCS Health LP*,
   172 S.W.3d 603 (Tex. 2005) ...........................................................................47

*Peleg v. Nieman Marcus Group, Inc.*,
   204 Cal. App. 4th 1425 (Cal.App.2d Dist. 2012)..................................44, 45, 47

*Sablosky v. Edward S. Gordon Co.*,
   73 N.Y.2d 133 (1989) ........................................................................................46

**FEDERAL STATUTES AND RULES**

28 U.S.C.
   § 1291...............................................................................................................1
   § 1332(d)...........................................................................................................1
   § 1332(d)(2)(A).................................................................................................24

Fair Labor Standards Act
   29 U.S.C. § 201.................................................................................................18

Federal Arbitration Act
   9 U.S.C. § 1.................................................................................................14, 44

Federal Rule of Civil Procedure
   12(b)(1) ......................................................................................................15, 16
   68...........................................................................................................*passim*
   23..................................................................................................19, 20, 21, 22

**STATE STATUTES AND RULES**

Virginia Consumer Protection Act
   § 59.1-204(A), (13) ......................................................................10, 11, 16, 17
   § 59.1-204(A), (B) .................................................................................11, 16

**OTHER AUTHORITIES**

17 Corpus Juris Secundum
    § 16.............................................................................................................25

Restatement (Second) of Contracts
    § 69 (1981)................................................................................................31
    § 79 (1979)................................................................................................45

Restatement of Conflict of Laws
    § 326 (1934)..............................................................................................24

## JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  CAFA confers jurisdiction on the federal courts for any alleged class action in which any member of the purported class is a citizen of a state (here Maryland) diverse from the defendant (here either Delaware or New York), and in which the amount in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)

The appellate jurisdiction of this Court is conferred by 28 U.S.C. § 1291. This appeal was taken from the district court's entry of a final judgment on June 18, 2014,  A. 252.  Klein filed a Notice of Appeal on July 1, 2014, A. 253, and Verizon filed its notice of cross-appeal on July 17, 2014.  A. 256.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Regarding Verizon's cross-appeal, the issue is as follows:

1.    Whether the district court erred in declining to dismiss Klein's claims as moot where Verizon, upon learning of its billing error, made an offer of judgment pursuant to Federal Rule of Civil Procedure 68 that would have provided Klein all of the relief potentially available to him?

Regarding Klein's appeal, the issues are as follows:

2.    Whether the district court properly applied Maryland law to determine whether the parties agreed, in Maryland, to a modified service contract?

3.    Whether the district court properly concluded that Verizon and Klein entered a valid contract modification in 2012 where Verizon, consistent with the parties' prior agreements, provided Klein email notice of the proposed modification and Klein continued to use Verizon's services without protest?

4.    Whether the district court properly concluded that the parties' arbitration agreement applies to the present dispute concerning Klein's service from Verizon?

## STATEMENT OF THE CASE

### A.    Overview of the Case

This action rests entirely on a simple mistake that has now been fixed.

Appellant Jason Klein, a Verizon customer, was charged an Early Termination Fee

("ETF") when Verizon, in order to resolve an error that resulted in double billing

for his high-speed Internet ("HSI") service, canceled his existing service and

replaced it with a new order.  This temporary cancellation prompted Verizon's

billing system to assess an ETF automatically, even though Klein should not have

been charged an ETF in these circumstances under Verizon's policies.  Klein paid

the charge without protest.

When Verizon discovered the mistake upon receiving the Complaint and

investigating Klein's account history, Verizon promptly refunded him the entire

ETF amount ($135).  Verizon also made an Offer of Judgment under Rule 68 of

the Federal Rules of Civil Procedure that would have provided Klein all of the

remedies potentially available to him under his claim, including reasonable costs

and attorney's fees.  Klein refused the offer and insisted on burdening the court and

Verizon with continued litigation over the validity of a fee that was charged by

mistake and has been fully refunded.

Verizon moved to dismiss on the ground that the district court lacked subject

matter jurisdiction over this matter because Klein has been offered all of the

remedies to which he could conceivably be entitled.  In the alternative, Verizon moved to compel arbitration pursuant to the terms of the parties' agreement.  The district court denied Verizon's motion to dismiss on the ground that Klein had an interest in representing the putative class and a yet-to-be-filed motion for class certification would relate back to the date of the Complaint, before Klein's individual claim was mooted.  Verizon contends that this ruling was in error.

Having denied the motion to dismiss, the district court granted Verizon's motion to compel arbitration and stayed this litigation.  The district court found that a valid arbitration agreement exists between the parties, and that the terms of this arbitration agreement – which covers "any dispute that in any way relates to or arises out of this agreement or from any equipment, products[,] and services [a customer] receive[s] from [Verizon]" – applied to the parties' dispute.  The district court further concluded that the arbitration agreement is not unconscionable, a holding that Klein does not dispute on appeal.

In March 2014, the parties participated in arbitration, and the arbitrator issued an award.  On June 17, 2014, the district court entered an order lifting the stay and entering final judgment based on the arbitral award.  Thereafter, Klein filed a Notice of Appeal on July 1, 2014 challenging the district court's order compelling arbitration.  Verizon filed its notice of cross-appeal on July 17, 2014 challenging the district court's ruling on mootness.

4

**B.**   **Klein's Service from Verizon**

From November 8, 2010 through at least fall 2012, Klein subscribed to Verizon High Speed Internet ("HSI") and voice telephone services.  A. 61.  Klein is a citizen of Maryland and received these HSI and telephone services at his home in Baltimore, Maryland.  A. 10, 17.

Klein subscribed to a bundled package that combined a commitment to subscribe to HSI and voice service for a one-year term in exchange for receiving discounts from the stand-alone prices of each service.  A. 17-18.  If the customer chooses to terminate one or both services "between months 2 and 12," i.e., after a one month trial period, an early termination fee ("ETF") will apply and the discount on any remaining service would be discontinued.  A. 18-19.  The ETF begins at $165 and declines by $15 each month until the customer completes the one-year term commitment.  *Id*.  Klein admits that he received a written explanation of these policies at the time of his order and approximately $15 per month in discounts for the two services from their standalone charges.  A. 17-19.

Unfortunately, Klein experienced billing problems during the first several months of his Verizon service.  Specifically, Klein was billed twice for his HSI service because Verizon erroneously placed two separate orders for HSI service to Klein's home.  A. 61, 116-17.  Verizon resolved the problem by deactivating Klein's existing HSI service, establishing new HSI service, and crediting Klein for

5

the double billing.  A. 61, 116-17; *see also* 117 (Klein Declaration stating, "I was

told by Verizon customer service that the only way to address the problem was to

terminate service.").  As part of the deactivation and reactivation process, Verizon

closed Klein's account and opened a new account a day later with Klein's assent.

A. 157-58.  Klein did not have a Verizon HSI account for just one day, and sixteen

days (at the most) passed during which Klein could not access the Internet.  A.

157-58.[1]  Verizon's records contain no indication that Klein requested to terminate

his relationship with Verizon during this time.  A. 162-67.

Upon deactivation of Klein's existing HSI service, Verizon's billing system

automatically applied a $135 ETF to Klein's account because the service had been

cancelled, albeit briefly, prior to the expiration of his one-year service agreement.

A. 61.  Pursuant to Verizon's policies, when Verizon disconnects an account to

correct a billing error, as in this case, a customer does not owe an ETF.  *Id*.  Thus,

Klein should have received an immediate credit for the $135 ETF.  *Id*.  In this

instance, however, Klein did not dispute the charge at the time it was assessed, and

Verizon did not realize its error in failing to timely credit Klein's account until

---

[1] Verizon's records show that Verizon disconnected Klein's HSI account on March 10, 2011 and called Klein to establish a new account on March 11, 2011. A. 157-58.  Verizon's records also show that Klein notified Verizon that he lacked internet access on March 9, 2011 and that he regained Internet access on March 15, 2011; even assuming Klein lost internet access on February 28, 2011 when Verizon disconnected one of his two HSI accounts (despite Klein not complaining about this issue to Verizon until March 9, 2011), he would have been without internet access for a maximum of sixteen days.  *Id*.

Klein filed the Complaint.  A. 61.  Upon receiving the Complaint and conducting

an investigation, Verizon refunded the ETF.  *Id.*  This account credit appeared on

Klein's August and September 2012 Verizon bills.  A. 62.

At the time he filed his Complaint, Klein was no longer subject to a term

commitment and could have cancelled his HSI service at any time without

incurring an ETF.  *Id.*

### C.    Klein's Agreements with Verizon

In receiving his service, Klein agreed to Verizon's terms of service then in

effect in October 2010 (the "2010 TOS") and March 2011 (the "2011 TOS").  A.

17, 20.  These agreements both provided for future modifications to the terms and

conditions of service.  *Id.* (referencing Complaint Ex. A at 1, Ex. B at 1).  The

March 2011 TOS states:

> **REVISIONS TO THIS AGREEMENT**
>
> From time to time we will make revisions to this
> Agreement and the policies relating to the Service.  We
> will provide notice of such revisions by posting revisions
> to the Website Announcements page, or sending an email
> to the email address you provide to receive
> communications from us (you "Primary Email Address"),
> or both.  You agree . . . to notify Verizon immediately of
> any changes in your Primary Email Address.  We will
> provide you with at least thirty (30) days notice prior to
> the effective date of any increases to the monthly price of
> your Service or Bundled Service plan . . . revisions to any
> other terms and conditions shall be effective on the date
> noted in the posting and/or email we send you.  By
> continuing to use the Service after revisions are effective,
> you accept and agree to abide by them.

A. 37-38 (§ 3); *see also* A. 30 (§ 3) (including a nearly identical clause in 2010

TOS).

On June 20, 2012, Verizon modified the customer agreement for Klein's service pursuant to the above provisions and sent notice to Klein via an email to his primary email address. A. 63; *see also* A. 84-85 (email notification); A. 88-112 (the 2012 Terms of Service ("2012 TOS")). Klein opened the email containing Verizon's notice of the revised terms on July 10, 2012. A. 64.

Verizon's email to Klein explained that "[t]he terms now require that you and Verizon resolve disputes only by arbitration or in small claims court" and provided links to more information about Verizon's dispute resolution procedures as well as the full terms of the 2012 TOS. A. 84-85. The email made clear that "[b]y continuing to use the services after the date of this notice, you accept and agree to abide by the revised terms." *Id*. Because Klein had completed his contract term and was a month-to-month customer at this point, he could have canceled the service without paying an ETF if he disagreed with or did not want to be bound by the revised contract terms. A. 62. Klein nonetheless continued to use the service. A. 20 (¶ 40). The 2012 TOS "supersede[d] any and all prior or contemporaneous agreements," including the 2010 TOS and the 2011 TOS. A. 103 (§ 15.7).

### D.    The Arbitration Provision in the 2012 TOS

As explained in Verizon's June 20, 2012 email to Klein, the 2012 TOS

provides for mandatory, individual arbitration of disputes between Klein and

Verizon.  A. 104-06 (§ 18).

The 2012 TOS describes the arbitration terms in detail, stating in relevant

parts:

- YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT.

- WE ALSO BOTH AGREE THAT . . . THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT.

- ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS[.]

- UNLESS YOU AND VERIZON AGREE OTHERWISE, THE ARBITRATION WILL TAKE PLACE IN THE COUNTY OF YOUR BILLING ADDRESS.

- **THIS AGREEMENT DOES NOT ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA OR BBB PROCEDURES OR RULES WOULD.**

A. 104-05 (§ 18-18.3) (emphasis in original).  The 2012 TOS further specifies that

"the Federal Arbitration Act and the substantive laws of the state of the customer's

billing address . . . will be applied to govern, construe and enforce all of the rights

and duties of the parties arising from or relating in any way to the subject matter of

this Agreement."  A. 102-03 (§ 15.4).

### E.    Klein's Allegations

Klein filed his Complaint on July 11, 2012. Klein's Complaint does not reference (or dispute) the arbitration provision in the 2012 TOS. Klein's sole claim for relief is predicated on Virginia Consumer Protection Act ("VCPA") Section 59.1-200(A)(13), which prohibits a "liquidated damage clause" or "penalty clause" that is "void or unenforceable under any otherwise applicable laws of the Commonwealth, or under federal statutes or regulations." A. 26. Klein asserts that Verizon engaged in a practice prohibited by that statute by "using in a contract and by collecting liquidated damages that are unenforceable under the common law." *Id*.

### F.    Verizon's Offer of Judgment

On August 16, 2012, Verizon notified Klein that the ETF had been refunded and personally served Klein with an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68.[2] A. 55-57. By its terms, the Offer of Judgment provided that Verizon "offers to allow a judgment to be taken against Verizon in favor of Plaintiff Jason Klein in the amount of $1,000.00 together with the costs Plaintiff has incurred to date, including Plaintiff's reasonable attorney's fees as the Court

---

[2] Although Rule 68 does not normally permit parties to submit evidence of an unaccepted offer except to prove costs, a Rule 68 offer can be proffered where, as here, the offer has been used to show that the district court lacks subject matter jurisdiction. *See, e.g.*, *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 371 (4th Cir. 2012).

determines on petition of Plaintiff." *Id*. As explained in the Offer of Judgment,

$1,000 is the statutory maximum recovery for the VCPA violation alleged here.

*See* Va. Code § 59.1-204(A), (B). On August 30, Klein rejected Verizon's Offer of

Judgment and indicated his intention to pursue his claim against Verizon. A. 59.

## SUMMARY OF ARGUMENT

This case should have been dismissed for lack of subject matter jurisdiction

because Klein's claim became moot when he was offered all of the remedies to

which he could conceivably be entitled. Upon learning of the billing error at the

root of this dispute, Verizon promptly refunded the $135 ETF, offered to pay Klein

an additional $1,000 – the statutory damage amount provided by the VCPA – and

offered to pay his reasonable costs and attorney's fees. That offer rendered his

claims moot and eliminated any live case or controversy that could support subject

matter jurisdiction. *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d

754 (4th Cir. 2011). The district court concluded otherwise, but lacked the benefit

of the Supreme Court's recent opinion in *Genesis Healthcare Corp. v. Symczyk*,

133 S. Ct. 1523 (2013). *Genesis Healthcare* confirms that Klein's purported

interest in pursuing a class action cannot suffice to establish jurisdiction where

Klein himself lacks any stake in this litigation.

Because the case is moot and should have been dismissed, the Court need

not reach the issues raised in Klein's appeal. If the Court reaches the question of

11

arbitrability, the issues are not nearly as complicated as Klein suggests. First,

Maryland law applies to determine the validity of the 2012 TOS under traditional

contract principles that determines the governing law by looking to the place of

contracting. *See, e.g.*, *Coghlan v. S. Carolina R. Co.*, 142 U.S. 101, 111 (1891);

*Pro Football Inc. v. Paul*, 569 S.E.2d 66, 71 (Va. Ct. App. 2002) (contract is

formed in "[t]he place where the last act necessary to give validity to the contract

occurs"). The last act necessary to form the 2012 TOS occurred in Maryland

where Klein received notice of its terms and accepted them by continuing to use

the service.

Second, Klein's description of this case as involving either a "browsewrap"

or "clickwrap" agreement is inaccurate. These terms of art relate to when and how

visitors to a website may enter a contract governing their use of the website. The

present case does not involve a contract for use of a website; Klein agrees that he

entered into a service contract with Verizon in 2010 for the provision of HSI and

voice telephone services. Thus, the question before the Court is not whether the

2012 TOS is a browsewrap or clickwrap agreement, but whether the parties entered

a valid modification of their pre-existing service agreement. In this case, the

parties expressly agreed that Verizon may modify the agreement upon notice.

Verizon complied fully with this agreed-upon process by providing email notice of

the revised provisions, to which Klein assented by continuing to use the service.

No more is required under Maryland law. *See Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC*, 25 A.3d 967, 982 (Md. App. 2011) (contract modification requires notice and assent).

Next, the arbitration clause in the 2012 TOS applies to this dispute. In all caps and under a bold heading, the 2012 TOS states that "YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT," and provides that it applies to "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES" received from Verizon. A. 104. The underlying dispute – whether Verizon unlawfully charged Klein an ETF when temporarily closing his account to resolve a billing problem during the pendency of his contract – undoubtedly arises from and relates to the service that Klein receives from Verizon. *See Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 267 (4th Cir. 2011) ("any dispute" language "is broad enough to encompass all agreements and any disputes," including disputes pre-dating the arbitration agreement). The federal presumption in favor of arbitration further bolsters this conclusion. *See, e.g.*, *Peabody Holding Co., LLC v. United Mine Workers of Am.*, *Int'l Union*, 665 F.3d 96, 104, 106 (4th Cir. 2012).

Finally, the 2012 TOS is fully enforceable. Klein claims, for the first time on appeal, that the contract is illusory because Verizon retained the power to

modify its terms.  This claim, which Klein has waived in any event, is inconsistent

with the requirements of the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the

"FAA").  General contract principles, applicable outside the arbitration context, do

not require that any particular obligation be mutual in order to be enforceable, as

long as there is valid consideration in the parties' contract as a whole.  The out-of-

circuit authorities on which Klein relies would require that, as to an agreement to

arbitrate, the obligation must be mutual and not modifiable at the discretion of one

of the parties.  In doing so, these cases single out arbitration agreements for

disfavored treatment in violation of the FAA.  The Court should follow the

numerous other cases that have rejected Klein's contention.

## ARGUMENT

### I.    Standard of Review

All of the questions before the Court should be reviewed de novo.  *See

Warren*, 676 F.3d at 370-71 (mootness reviewed de novo); *Kenney v. Independent

Order of Foresters*, 744 F.3d 901, 905 (4th Cir. 2014) (choice of law reviewed de

novo); *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir.

1998) (arbitrability reviewed de novo).

The Court may consider evidence outside the pleadings for purposes of

considering the issues presently on appeal:  whether the Complaint should have

been dismissed for lack of subject matter jurisdiction on mootness grounds, and

whether the district court properly compelled arbitration. *See Warren*, 676 F.3d at

368; *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d

765, 768 (4th Cir. 1991).

## II.  Klein's Claim Is Moot And Should Have Been Dismissed for Lack of Subject Matter Jurisdiction

The district court erred in declining to dismiss Klein's claim as moot.

Verizon's Rule 68 Offer of Judgment offered Klein the full relief potentially

available to him and left him without a cognizable interest that could be vindicated

through the lawsuit.  The fact that Klein purported to bring his claims on behalf of

a class does not change this result.

### 1.    Klein Lacks Any Cognizable Interest In This Case

Article III of the Constitution limits the jurisdiction of federal courts to live

cases or controversies. *Spencer v. Kemma*, 523 U.S. 1, 7 (1998).  "A corollary to

this case-or-controversy requirement is that an actual controversy must be extant at

all stages of review, not merely at the time the complaint is filed." *Genesis*

*Healthcare*, 133 S. Ct. at 1528 (internal citations omitted).  A actual controversy

remains so long as a plaintiff holds "a personal stake in the outcome of the action."

*Id*. (internal quotation marks omitted).  "[W]hen the issues presented are no longer

'live' or the parties lack a legally cognizable interest in the outcome," a case is

moot and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

*Simmons*, 634 F.3d at 763 (internal alterations omitted).

15

A Rule 68 Offer of Judgment, even if not accepted, renders a plaintiff's claim moot when it "unequivocally offers a plaintiff all of the relief she sought to obtain." *Warren*, 676 F.3d at 371 (internal quotation and citation omitted). "Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake." *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991). "[C]ourts do not sit simply to bestow vindication in a vacuum." *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986) (affirming dismissal on the ground that "there was no longer any case or controversy" after defendants offered plaintiff "the full amount of damages . . . to which she claimed individually to be entitled").

Klein has lost his personal stake in litigating this case because Verizon's Offer of Judgment, if accepted, would have afforded Klein the complete relief potentially available to him in this litigation. *See* Ex. A. Klein does not contest these facts. A. 229 (noting that "Klein does not challenge the adequacy or completeness of Verizon's offer"). His one-count Complaint alleges a violation of the VCPA, which provides for exclusively monetary relief in a statutory maximum amount of $1,000 plus reasonable attorneys' fees and court costs. *See* Va. Code § 59.1-204(A), (B); *see also Physicians Comm. for Responsible Med. v. Gen. Mills, Inc.*, 283 F. App'x 139, 142, 144 (4th Cir. 2008) ("damage suits . . . are the private

16

remedy authorized by the VCPA"; the VCPA "provides no *private* cause of action

for injunctive relief").  By offering Klein $1,000 together with the costs Klein had

incurred to date, including Klein's reasonable attorney's fees, Verizon offered him

the maximum – and thus complete – recovery available.

> **2.     Klein is Not Entitled to Litigate a Moot Claim Simply Because He Purports to Represent, But Has Not Moved to Certify, a Class**

Article III does not exempt putative class actions from its requirements.

Contrary to the district court's ruling, the possibility that Klein could have filed a

motion for class certification that purportedly could have related back to the filing

of the Complaint does not confer jurisdiction upon the court.  In reaching a

contrary conclusion, the district court relied on authority from other circuits that

permits a party to move to certify a class even after his or her individual claim has

been rendered moot.  See A. 230-32 (relying on *Sandoz v. Cingular Wireless LLC*,

553 F.3d 913, 920-22 (5th Cir. 2008); *Weiss v. Regal Collections*, 385 F.3d 337,

348 (3d Cir. 2004); *Symczyk v. Genesis Health Care Corp.*, 656 F.3d 189 (3d Cir.

2011); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1250 (10th

Cir. 2011); and *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091-92 (9th Cir.

2011)).

In so deciding, however, the district court lacked the benefit of the Supreme

Court's subsequent decision in *Genesis Healthcare*, 133 S. Ct. 1523.  In *Genesis*

*Healthcare*, the Supreme Court resoundingly rejected the notion that a party's desire to represent similarly-situated claimants constitutes a sufficient interest in the action to satisfy the requirements of Article III when the party's individual claim has become moot.

> (a)     *Genesis Healthcare Requires Dismissal of a Claim Rendered Moot By a Full Settlement Offer*

In *Genesis Healthcare*, an individual employee, Symczyk, brought a Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA") action alleging that her employer had violated FSLA's overtime provisions by undercounting her work hours. She styled her claim as an FSLA collective action, which provides for a specialized opt-in form of collective litigation. *Genesis Healthcare*, 133 S. Ct. at 1527. At a time when no other employees had joined Symczyk's case, her employer presented her with a Rule 68 offer that offered her all available statutory damages, plus fees and costs. *Id*. Although Symczyk failed to accepted the offer, the parties agreed that the offer rendered Symczyk's individual claim moot. *Id*. at 1529. Symczyk nevertheless sought to continue her litigation on the ground that her collective action allegations prevented the Rule 68 offer from rendering her allegations moot.

The Supreme Court found that without an individual stake in play, Symczyk could not litigate her collective action claims because no live case or controversy supported the court's jurisdiction. "In the absence of any claimant's opting in, [Symczyk's] suit became moot when her individual claim became moot, because

she lacked any personal interest in representing others in this action." *Id*. The Supreme Court further explained that "the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied." *Id*. "A straightforward application of well-settled mootness principles compel[led] [this] answer." *Id*. at 1529; *see also, e.g.*, *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) ("denomination of [an] action as a class action does not save [a plaintiff's] request for … relief" when his own claims have been rendered moot); *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986) (concluding that the plaintiff's "personal stake in the outcome had disappeared" after "defendants had offered [her] the full amount of damages … to which she claimed individually to be entitled").

That *Genesis Healthcare* involved a collective action under the FSLA, rather than a putative class action under Rule 23, is not sufficient to avoid its application in the procedural context of this case. The Supreme Court recognized that FSLA collective actions and Rule 23 class actions are "fundamentally different," in that a Rule 23 certification produces a class with an "independent legal status" whereas an FSLA conditional certification does not. *Id*. at 1529-30; *see also Sosna v. Iowa*, 419 U.S. 393, 399 (1975) (holding that a class action is not rendered moot when the named plaintiff's individual claim becomes moot *after* the class has been duly

certified because the certified class "acquire[s] a legal status separate from the interest asserted by [the named plaintiff]").

In the posture of this case, where there has been no motion for class certification, the Supreme Court's reasoning applies with full force because there is no certified class with an independent legal status separate and distinct from Klein's individual claims. In *Genesis Healthcare*, the Supreme Court emphasized that its prior mootness cases in the class action context found subject matter jurisdiction *only when* the named plaintiff's claims became moot *after* a class has been certified or the certification of the class had been erroneously denied. Thus, in discussing *Sosna*, the *Genesis Healthcare* court noted that "a class action is not rendered moot when the named plaintiff's individual claim becomes moot *after* a class has been duly certified. *Genesis Healthcare*, 133 S.Ct. at 1530 (emphasis in the original). Likewise, the Court stressed that, in *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 406 n. 11 (1980), "the Court explicitly limited its holding to cases in which the named plaintiff's claim *remains live at the time* the district court [erroneously] denies class certification." *Genesis Healthcare*, 133 S.Ct. at 1530 (emphasis added).

Thus, the distinction between a collective action under the FSLA and a Rule 23 class action lies in the independent legal status of a class action under Rule 23 that arises *upon certification*. Where, as here, the individual plaintiff's claim

20

becomes moot before the class is certified or, indeed, before a motion to certify has even been filed, there is no independent legal significance to the class allegations that could avoid the application of the mootness doctrine. Where, as here, a litigant "has no personal interest in representing putative, unnamed claimants, nor any other continuing interest that would preserve her suit from mootness" her suit must be dismissed for lack of subject-matter jurisdiction. *Id.* at 1532.

That conclusion is consistent with and presaged by the Seventh Circuit's decision in *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011). In *Damasco*, the plaintiff sought to pursue a class action against Clearwire Corporation for sending unsolicited text messages to consumers even after Clearwater had offered the plaintiff all statutory damages to which he might be entitled, plus fees and costs. The plaintiff argued that his case should be allowed to proceed because the defendant's settlement offer might otherwise "pick off" class representatives by mooting their claims. *Damasco*, 662 F.3d at 896. The Seventh Circuit rejected this argument. *Id.*; *see also Genesis Healthcare*, 133 S. Ct. at 1533 (noting that the Supreme Court previously acknowledged the "pick off" argument just once and "[o]nly … in dicta"). *Damasco* held that "[t]o allow a case, not certified as a class action and with no motion for class certification even pending, to continue in federal court when the sole plaintiff no longer maintains a personal stake defies the limits on federal jurisdiction expressed in Article III." *Id*. at 896.

21

Thus, *Damasco* concluded that the mootness exception adopted in *Sandoz* and similar cases "runs afoul of Article III."  *Id.*

Genesis Healthcare* demonstrates that the district court erred in rejecting the holding of *Damasco* in favor of contrary decisions like *Sandoz*, which itself arose in the context of the FSLA.  Subsequent to *Genesis Healthcare*, a number of courts have rejected its application to the Rule 23 class action context.  *See e.g.*, *Gomez v. Campbell-Ewald Co.*, --- F.3d ----, 2014 WL 4654478, *3, *3 n.2 (9th Cir. Sept. 19, 2014); *Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, 974 F. Supp. 2d 856 (D. Md. 2013).   As other courts have recognized, such decisions err in seizing solely on the Supreme Court's observation that FLSA collective actions are "fundamentally different" than a Rule 23 class action, without considering the Supreme Court's full reasoning.  *See, e.g.*, *Masters v. Wells Fargo Bank S. Central, N.A.*, 2013 WL 3713492, at *5 (W.D. Tex. 2013) (applying *Genesis Healthcare* to dismiss class action allegation as moot); *Franco v. Allied Interstate LLC*, 2014 WL 1329169, at *3-*4 (S.D.N.Y. April 2, 2014) (same).

> (b)    <u>Genesis Healthcare</u> *Forecloses the "Relation Back" Concern Expressed by the District Court*

*Genesis Healthcare* also forecloses the district court's reasoning that a latter-filed motion by Klein could relate back to his Complaint.  *Genesis Healthcare* held that damages claims like Klein's, by their nature, will never support the application

22

of the "relation back" doctrine. "[A] claim for damages cannot evade review; it remains live until it is settled, judicially resolved, or barred by a statute of limitations." *Id*. at 1531. While a narrow category of class action cases may involve claims "so inherently transitory" that a class certification motion must be deemed to relate back to the initial filing date, *Genesis Healthcare* explained that damages claims will never fall into this category. *Id*. at 1531 (explaining, for instance, that injunctive relief claims related to pre-trial detention may be inherently transitory given the brief nature of such detentions). In the damages context, while "settlement may have the collateral effect of foreclosing unjoined claimants from having their rights vindicated in *respondent's* suit, such putative plaintiffs remain free to vindicate their rights in their own suits." *Id*.

 *Genesis Healthcare* recognized that a narrow exception to its mootness holding may remain where a plaintiff possesses an ongoing financial interest in the litigation even after his individual damages claim has been rendered moot. *See Genesis Healthcare*, 133 S. Ct. at 1532 (discussing *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326 (1980)); *but see id*. at 1532 n.5 (noting that "because *Roper* is distinguishable on the facts, we need not consider its continuing validity"). In *Roper*, the Supreme Court found that the plaintiff possessed a continuing "personal economic stake in the substantive controversy" despite his individual claims having been rendered moot because the plaintiff stood to benefit personally from a

fee shifting provision if his class allegations prevailed.  *Id.* at 1532.  Even if *Roper*

remains good law, its holding is immaterial here because Verizon's Rule 68 offer

included Klein's attorney's fees and costs.  Unlike the plaintiff in *Roper*, Klein has

no personal economic stake in this litigation.

For all of these reasons, including in particular the fact that Verizon offered

Klein the full relief potentially available to him, the district court erred in failing to

dismiss the Complaint as moot.

## III.    Maryland Law Controls the Validity of the Parties' Contract Modification

Upon reaching Verizon's motion to compel arbitration, the district court

correctly concluded that Maryland law controls the question of whether the parties

entered a valid contract modification in 2012.

### A.    Verizon and Klein Entered the 2012 Contract Modification in Maryland, Rendering Maryland Law Applicable

As the district court explained, "Traditional contract principles determine the

governing law by looking to the place of contracting."  A. 234 (citing *Keco Indus.,*

*Inc. v. ACF Indus., Inc.*, 316 F.2d 513, 514 (4th Cir. 1963) (citing Restatement of

Conflict of Laws § 326 (1934)); *see also Coghlan*, 142 U.S. at 111 (same).

Virginia's choice of law rules – which apply here given that the district court was

sitting in diversity, *see* 28 U.S.C. § 1332(d)(2)(A) (diversity jurisdiction

requirement of CAFA) – follow this traditional rule.  *See, e.g.*, *Colgan Air, Inc. v.*

24

*Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (substantive law of the forum state applies in diversity actions); *Pro Football Inc.*, 569 S.E.2d at 71 (under Virginia law, contract is formed in "[t]he place where the last act necessary to give validity to the contract occurs").

Klein does not contest that Maryland, where he resides, is the place of contracting in this case. Klein receives Verizon's services at his home in Maryland and the acts that Verizon contends manifested Klein's consent to the contract modification – *i.e.*, his continued receipt of service upon notice from Verizon – occurred in Maryland. A. 17. For these reasons, Maryland law controls the question of whether the parties entered a valid contract modification.

### B.  Klein's Effort to Apply the Choice of Law Provision Found in the Parties' Prior Agreements Is Unavailing

Klein argues that Virginia, not Maryland, law applies because the parties' prior agreements contained a Virginia choice of law provision. But the issue before the court does not concern whether Klein is bound by the prior agreements. The relevant question is whether or not the parties validly entered into the 2012 contract modification that contains the arbitration provision at issue. To determine whether the parties entered this 2012 modification the court should look not to the parties' prior agreements, but to their conduct related to acceptance of the proposed modification. *See, e.g.*, 17 Corpus Juris Secundum § 16 ("Where a contract is

made in one state and is modified by an ancillary agreement made in another state, the law of the latter state will apply to the modification.").

The authorities Klein cites do not upend this principle. Klein emphasizes that *Harold H. Higgins Realty, Inc. v. FNC, Inc.*, 575 F. Supp. 2d. 696 (D. Md. 2008) found "no question" concerning which state law to apply – but he fails to explain that "all three agreements" at issue in *Higgins* "contain[ed] choice-of-law provisions designating the law of Mississippi as the law to be applied to disputes arising under the agreements." 575 F. Supp. 2d. at 703. *Perry v. Fleetboston Fin. Corp.*, 2004 WL 1508518 (E.D. Pa. July 6, 2004) addressed choice of law in a footnote and includes too little information to enable a reader to determine the *lex loci* of the contract modification or whether any dispute existed as to choice of law. *See id*. at *2.

Klein's citations to various Virginia authorities are likewise unavailing because these decisions have no bearing on the question at hand. *See* Appellant's Opening Br. ("AOB") at 15-16. The cited cases all support the undisputed principle that Virginia law would govern a dispute requiring the court to interpret the 2010 or 2011 terms of service. Virginia's favorable view of the choice of law clauses in the parties' prior contracts is immaterial, however, to the issue of Klein's assent to the 2012 contract modification. This issue, as discussed above, is governed by the law of Maryland, where the last acts necessary to enter the

modification occurred.  *See, e.g., Coghlan*, 142 U.S. at 111 ("[L]ex loci contractus determines the nature and legal quality of the act done, [including] whether it constitutes a contract").

For all of these reasons, the district court correctly applied Maryland law.

### C.    Klein's Contention that the District Court Improperly Applied the Presumption in Favor of Arbitration is Unfounded

Klein's argument that the district court misapplied the federal presumption in favor of arbitration is unfounded and his failure to cite any portion of the district court's opinion related to the formation or validity of the parties' agreement in support of this argument is telling.  *See* AOB at 17.

Contrary to Klein's suggestion, the district court's choice of law analysis included no references to the federal presumption in favor or arbitration.  *See* A. 234 (district court opinion Section 1).  Likewise, the district court did not raise or apply this presumption in its examination of the validity of the parties' contract modification.  *See* A. 234-36 (district court opinion Section 2).  Klein takes out of context the district court's application of the presumption in determining the scope of arbitral claims – an inquiry to which the presumption unquestionably applies – and asserting that the district court applied the presumption to the question of whether the contract was validly modified.  In fact, the district court did not do so.

27

**IV.    The Parties Entered a Valid Contract Modification**

Verizon and Klein entered a valid contract modification in 2012 when Klein received an email from Verizon devoted to explaining the new arbitration provisions in easy-to-understand language; opened this email; continued to receive Verizon's services; and never suggested his disagreement with any of the contract terms.   That these actions occurred in the "internet context," as emphasized by Klein, does not change their import.

**A.    Klein Agreed to the Proposed Contract Modification By Continuing to Use Verizon's Services After Receiving Notice of the New Terms**

Under Maryland law, a valid contract modification requires:  (1) notice of the modification and (2) acceptance of the modified terms.  *See Hovnanian Land Inv. Grp., LLC*, 25 A.3d at 982; *see also CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 669 (D. Md. 2009) (online agreement binding where plaintiff had "reasonable notice of" and "manifested assent to" its terms).  Both notice and acceptance may be implied so long as the offeror affords the offeree "a satisfactory description of the changes."  *DIRECTV, Inc. v. Mattingly*, 829 A.2d 626, 635 (Md. 2003); *see also Dominion Nat'l Bank v. Sundowner Joint Venture*, 436 A.2d 501, 513 (Md. Ct. Spec. App. 1981); *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 306 (4th Cir. 2001).

In this case, Verizon provided reasonable notice and a satisfactory

28

description of the modified terms in the 2012 TOS by emailing Klein a message

devoted to explaining the new arbitration provisions.  Verizon sent this notification

to Klein's personal email address, which he provided to Verizon for the express

purpose of receiving communications from Verizon, and Verizon's records show

that Klein opened the notification.  A. 64.  In easy-to-understand prose, Verizon

explained to Klein that the terms of his agreement with Verizon "now require that

you and Verizon resolve disputes only by arbitration or in small claims court."  *Id*;

A. 83-84.  Verizon's email included direct links to Verizon's dispute resolution

procedures as well as the full terms of the 2012 TOS and explained to Klein that he

could visit these links "[f]or more information" and to "review the revised terms."

A. 83-84.  Verizon's email also explained that "[b]y continuing to use the services

after the date of this notice, you accept and agree to abide by the revised terms."

*Id*.  Together, these phrases by their "very nature . . . provide[d] the customer with

enough information to make an informed decision" and related to him how,

exactly, the modified agreement differed from the prior agreement.  *See DIRECTV,

Inc.*, 829 A.2d at 636.

Maryland courts have approved of similar announcements as providing

sufficient notice to effectuate a valid modification of a contract.  *See Freedman v.

Comcast Corp.*, 988 A.2d 68, 86 (Md. Ct. Spec. App. 2010); s*ee also DIRECTV,

Inc.*, 829 A.2d at 638-39.  In *Freedman*, the court found that Comcast provided a

plaintiff with "clear and conspicuous" notice of its new arbitration clause when Comcast distributed a bill insert "addressing only the Arbitration provision." 988 A.3d at 72, 86. Verizon's email notice was even more "clear and conspicuous" than that provided in *Freedman* because Verizon sent its notice via a stand-alone email rather than a bill insert accompanying other, unrelated documents. Moreover, Verizon's email to Klein followed the very procedure Verizon and Klein agreed would govern modifications to their agreement: Verizon "provide[d] notice of [the] revisions by . . . sending an email to the email address that you provide to receive communications from us." A. 37-38 (§ 3). Such strict adherence to the terms of the parties' contract weighs heavily in favor of finding adequate notice. *See DIRECTV, Inc.*, 829 A.2d at 636-38.

In this case, Klein accepted the modified terms set forth in Verizon's email when he continued to use Verizon's services after receiving notice of the new arbitration provisions. Acceptance via continued receipt of the benefits of a contract is well recognized. *See DIRECTV, Inc.*, 829 A.2d at 641. Acceptance via silence is also well recognized where, as here, the parties previously agreed upon the method by which modifications would be made. *See Int'l Bhd. of Teamsters v. Willis Corroon Corp.*, 802 A.2d 1050, 1058 (Md. 2002) (silence constitutes acceptance if, in light of a previous course of dealing, the offeree was obligated to notify the offeror that he is not willing to accept the revised terms) (citing

30

Restatement (Second) of Contracts § 69 (1981)).

For the first time on appeal, Klein suggests that he did not actually assent to the contract modification because he filed suit the day after he opened Verizon's notification email. *Compare* AOB at 24 *with* Klein Opp'n to Mot. to Dismiss, Dist. Ct. Dkt. No. 29 at 12-15 (failing to raise argument in briefing) *and* A. 199-206 (failing to raise argument at hearing). This new argument should be rejected out of hand. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 242 (4th Cir. 2009) ("Absent exceptional circumstances, … we do not consider issues raised for the first time on appeal."). Klein's contention is unpersuasive in any event because his Complaint raised no objection to the proposed contract modification; instead, the Complaint's sole allegation concerns the propriety of the ETF. A. 9-28. As the district court correctly concluded, Klein never "provide[d] any indication that he objected to the modifications at any time prior to submitting his Opposition to [Verizon's] Motion" to Compel Arbitration. A. 235-36.

Klein also relies on *Myers v. MBNA Am.*, 2001 WL 965063 (D. Mont. Mar. 20, 2001) to dispute his assent to the contract modification. In *Myers*, the defendant in that case failed to provide any notice of the disputed contract provision; as a result, the court concluded that the defendant had deprived the plaintiff of a fair opportunity to contest the purported modification. Unlike the plaintiff in *Myers*, Klein received a detailed, plain-language explanation of the

contract modification and its effect.  A. 83-84.  The court's reasoning in *Myers*

thus supports, not undercuts, the enforceability of the arbitration clause here.

### B.    The "Internet Context" Emphasized By Klein is Immaterial

The Court should reject Klein's effort to portray this case as an opportunity

to examine "browsewrap" and "clickwrap" agreements.  As Klein details,

browsewrap and clickwrap are terms assigned by courts to describe different

means of agreeing to online "Terms of Use."  A browsewrap agreement is typically

presented via a hyperlink and does not require any affirmative statement that the

user agrees to the contract.  A clickwrap agreement – as the name suggests –

typically requires a user to click a button indicating that she agrees to the terms.

*See, e.g.*, *Specht v. Netscape Comms. Corp.*, 306 F.3d 17, 23 (2d Cir. 2002).

This case concerns neither a browsewrap nor clickwrap agreement because it

relates to a proposed modification to an existing agreement between the parties and

an explicit notification of that proposal sent via email directly to Klein.  Klein was

not an unsuspecting visitor to a website, nor was he unaware that he had entered

into an agreement to purchase services from Verizon.  *See*, *e.g.*, A. 18 (pleading

that Klein entered a contract to purchase services from Verizon).  The browsewrap

and clickwrap cases are simply inapposite in this context.

Even if the court applies the browsewrap label to the parties' contract

modification, the notice and assent analysis set forth above, *see supra* Section

IV.A, remains the same. Courts considering the validity of browsewrap agreements typically require that "the website user must have had actual or constructive knowledge of the site's terms and conditions, *and* have manifested assent to them." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 130 n.18 (2d Cir. 2012) (quoting *Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d. 927, 937 (E.D. Va. 2010)); *see also* AOB at 27-28 (relying on *Cvent*). This is the same standard applied above and by the district court. *See supra* Section IV.A; A. 234 (district court analysis of notice and acceptance, which cites to *CoStar*, 612 F. Supp. 2d at 669). Klein critiques the district court's single citation to *CoStar* as "error," *see* AOB at 25, but his own authorities follow the same notice and assent requirements set forth in that decision. *See Cvent, Inc.* 739 F. Supp. 2d. at 937 (requiring actual or constructive notice and assent); *Specht*, 306 F.3d at 29 (same); *AvePoint, Inc. v. Power Tools, Inc.*. 981 F. Supp. 2d 496, 510 (W.D. Va. 2013) (same).

Further, courts that have found browsewrap agreements wanting have encountered factual scenarios far different from those in the present case. In *Specht*, the court declined to apply a browsewrap agreement where visitors to a website offering free software would have had to scroll down past the prominent "Download" button to learn that the website included a link to its purported Terms of Use. *Specht*, 306 F.3d at 17, 32. Likewise, in *Cvent*, the court found that the defendant website owner could not maintain a breach of contract action premised

33

on its browsewrap agreement because it failed to plead facts suggesting that the plaintiff would have had an opportunity to learn about the agreement. *See Cvent, Inc.*, 739 F. Supp. 2d. at 937. The link to the agreement in *Cvent* was "buried at the bottom of the [webpage], in extremely fine print, and users must affirmatively scroll down to the bottom of the page to even see the link." *Id*. at 933. Moreover, at the bottom of the page, users attempting to access the Terms of Use were "confronted with a black band with twenty-eight different links separated into four columns and grouped under four headings." *Id*.[3]

Unlike these browsewrap cases where website visitors had no knowledge that a purported contract even existed, much less where to find the contract, the present case involves an ongoing contractual relationship between Klein and Verizon where Verizon sent Klein an email dedicated to explaining a proposed contract modification. *See* A. 83-84. This email contained easy-to-find links, a description of the revised terms, and an explanation that continuing to use the service would qualify as acceptance. *Id*. These facts, as well as the fact that Klein

---

[3] Klein's other browsewrap citations are no more persuasive. *See Avepoint, Inc..* 981 F. Supp. 2d 496, 510 (finding facts sufficient to suggest that plaintiff had actual or constructive notice of agreement); *Kraft Real Estate Inv., LLC v. HomeAway.com, Inc.*, 2012 WL 220271, at *7-*10, *10 n.21 (D.S.C. Jan. 24, 2012) (examining clickwrap agreements except in footnote, which found a browsewrap agreement unenforceable where the defendant had proffered no evidence concerning whether or how it had notified the plaintiff of the subject terms).

received the email, continued to use Verizon's services, and did not object to the terms until months after the parties became embroiled in this litigation, all demonstrate that actual or constructive knowledge and manifested assent are present here.

In sum, even if the contract is portrayed as a browsewrap agreement (which it is not), the facts demonstrate that the parties entered a valid modification.

## V.    **The Arbitration Agreement Applies to this Dispute**

The arbitration provision here unambiguously encompasses Klein's challenge to the ETF.  Klein proffers a kitchen sink of arguments contesting this result, but none of these arguments is persuasive in the face of the plain language of the parties' agreement.

### A.    **The Parties' Agreement to Arbitrate "Any Dispute" Relating to "Service" Encompasses this Dispute Relating to Verizon's Service**

The arbitration provision in the 2012 TOS covers "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES [A CUSTOMER] RECEIVE[S] FROM [VERIZON]."  A.  104 (§ 18.1).  This Court has repeatedly concluded that "any dispute" language means exactly what it says: *any* dispute described in the arbitration provision is covered by the arbitration agreement.  *See Levin*, 634 F.3d at 267 ("any dispute" language "is broad enough to encompass *all* agreements and *any* disputes, past and present" (emphasis in original)); *Long v.*

35

*Silver*, 248 F.3d 309, 316 (4th Cir. 2001).  The phrase "relates to or arises out of,"

A. 104 (§ 18.1), is likewise "capable of expansive reach."  *Am. Recovery Corp. v.*

*Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (examining

the phrase "arose out of or related to").

This Court and others have consistently concluded that an arbitration

provision like the present one that encompasses "any dispute" applies to disputes

arising out of facts that pre-date the arbitration provision.  *See Levin*, 634 F.3d at

267 (collecting cases including *Cara's Notions*, 140 F.3d at 568).  In *Levin*, this

Court compelled a plaintiff to arbitrate disputes that arose years before the parties

signed an arbitration agreement.  *Levin* found that the parties agreed to arbitrate all

of their disputes, regardless of age, based on their decision to include the expansive

phrase "any dispute" within the scope of their arbitration agreement.  *Id*.  *Levin*

explained that there could be no doubt that "any dispute" encompassed past

disputes that arose when prior contracts were in effect because the parties had "an

ongoing relationship that was seamlessly renewed."  *Id*. at 269.

Similarly, in *Zink v. Merrill Lynch Pierce Fenner & Smith*, 13 F.3d 330, 331

(10th Cir. 1993), the court found that an agreement to arbitrate disputes related to

the plaintiff's investment account applied retroactively because the arbitration

clause at issue covered "any controversy … arising out of" the plaintiff's business.

Given this broad language, the court in *Zink* found that limiting the arbitration

36

clause to a prospective application would "run[] contrary to contract principles which govern arbitration agreements."  *Id*. at 332.  Likewise, in other cases addressing similar language, the courts looked to the subject matter covered by the clause and determined that clauses like the present one covering equipment, products and/or services applied retroactively.  *See*, *e.g.*, *TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 34-36 (2d Cir. 2011) (forum selection clause covering disputes "arising out of or relating to this agreement or the Google Program(s)" applied retroactively); *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1028 (11th Cir. 1982) ("By its own terms the contract between the parties covers not only disputes arising out of the agreement, but ... includes any controversy between us arising out of your business."), *abrogated on other grounds by Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985); *Nanosolutions, LLC v. Prajza*, 793 F. Supp. 2d 46, 61 (D.D.C. 2011) (agreement to arbitrate "conflicts between parties" retroactive); *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) ("The agreement covers all the derivative plaintiffs' claims because it encompasses any dispute arising out of the agreement, KPMG's services thereunder, and 'any other services provided by or on behalf of KPMG.'").

Here, the arbitration provision similarly encompasses "any dispute" relating to Verizon's service.  *See* A 104 (§ 18.1).  As a result, *Levin* and similar cases

37

control the retroactive application of the 2012 agreement.  Under the plain meaning of the arbitration provision, and certainly under an "expansive" reading of the "relates to or arises out of" clause, Klein's Complaint raises a "dispute" that "relates to" and "arises out of" the Verizon HSI and telephone "services" he received.  Klein was charged the ETF only as a result of receiving his HSI and telephone services from Verizon, and Verizon's mistake in failing to credit this fee (as its policies require) is itself a service issue from which this dispute arises.

The FAA's presumption in favor of arbitration further bolsters the conclusion that the arbitration provision in the 2012 TOS applies to the present dispute.  "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643,650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574,584-85 (1960)) (finding the presumption favoring arbitration "particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of 'any differences arising with respect to the interpretation of this contract'").  This Court recently emphasized that courts must compel arbitration "unless it may be said *with positive assurance* that the arbitration clause *is not susceptible of an interpretation* that covers the asserted dispute."  *Peabody Holding Co., LLC*, 665

38

F.3d at 104, 106 (internal citations and quotation marks omitted) (emphasis added).

No such positive assurance *against* arbitration is possible here where Klein seeks

to challenge the legality of the ETF mistakenly charged by Verizon in connection

with the services Verizon provided to him.

**B.    Klein's Arguments Against Enforcement of the Arbitration Provision Are Unfounded**

Klein's many efforts to avoid arbitration rely on factually distinguishable

cases or a misreading of the record and should be rejected.

**1.    The 2010 Agreement Does Not Limit the Retroactive Application of the Arbitration Agreement**

Klein contends that the language of the parties' 2010 agreement prevents the

retroactive application of the arbitration provision.  This argument is unpersuasive,

however, in light of the plain language of the 2010 TOS and this Court's holding in

*Levin*.

The 2010 TOS provides that "revisions to any other terms and conditions

[beyond those related to price changes] shall be effective on the date noted in the

posting and/or email we send you."  A. 30 (§ 3).  The plain language of this phrase

explains when revised terms go into effect (assuming such revisions are accepted,

as discussed *supra* Section IV).  The meaning of the revised terms themselves –

including whether such terms apply retroactively or prospectively – must be

informed by the language of the revised terms.  *See Levin*, 634 F.3d at 267

39

(examining arbitration agreement language to determine its retroactivity); *see also, e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 317 (2001) (statute's inclusion of an effective date does not inform, one way or another, whether such statute should be applied retroactively). Thus, the 2010 TOS does not prevent the retroactive application of the arbitration provision in the 2012 TOS.

## 2. Cases Limiting the Retroactivity of Arbitration Agreements in Stop-And-Go Relationships Are Not Applicable Here

Klein relies on two cases that involved multiple, unrelated contracts in an effort to dispute the retroactivity of his arbitration agreement with Verizon. These cases are not analogous to the facts of the present dispute.

*Hendrick v. Brown & Root, Inc.*, 50 F. Supp. 2d 527, 532 (E.D. Va. 1999) found that an arbitration clause did not apply retroactively to the parties' prior agreements because the parties had signed "discrete and separate 'project-by-project' agreements spanning specific periods of time with lengthy gaps" – often years – "between each agreement." *Levin*, 634 F.3d at 269 (describing *Hendrick*). Similarly, *Verizon Advanced Data, Inc. v. Frognet, Inc.*, 2006 WL 2373265 (S.D. Ohio Aug. 14, 2006) involved two separate contracts, each related to a distinct service. *Frognet* found that the arbitration clause in one agreement did not apply to a dispute arising out of the other agreement because the agreements were for different services and unrelated to one another. *See id.* at *4.

Here, the parties had one continuing relationship related to the provision of bundled HSI and voice services.  A. 157-58.  Klein claims that his agreement with Verizon was "terminated" in March 2011.  *See* AOB 43-44.  But both Klein and Verizon understood that the brief interruption in Klein's HSI connection was intended "to address the problem" Klein was experiencing with his service and billing.  A.157-58; A. 117.  Verizon's records include no indication that Klein requested a termination to end the relationship or the contract.  A. 162-67. Moreover, a single break in service of brief duration is entirely different from a series of discrete projects separated by months- and years-long breaks, as in *Hendrick*, or a series of contracts covering unrelated services, as in *Frognet*.  Klein did not have a Verizon HSI account for just one day, and just sixteen days (at the most) passed during which Klein could not access the Internet.  A. 157-58; *see also supra* n.1.  Klein received the exact same HSI and voice telephone services on both sides of these short breaks. A. 19-20; A. 157-58.

Given these facts, *Levin*, not *Hendrick* or *Frognet*, controls.   In *Levin*, the parties signed four separate contracts all involving identical financial advisory services.  *See Levin*, 634 F.3d at 269.  To the extent that the interruption in Verizon's service in March can be viewed as creating a new contract (which it did not), that contract would be even more closely related to the prior contract than was the case in *Levin*.  Moreover, *Levin* did not suggest that the duration or subject

41

of the contracts before it were determinative factors.  Instead, "the [arbitration clause's] broad scope … and … the arbitrability presumption that applies with special force to broadly written clauses" supported the court's retroactivity holding.  *Id*.

In sum, for reasons including the plain language of the 2012 TOS and the broad reading that should be applied to arbitration provisions, the parties' arbitration agreement applies to Klein's claims.

### 3.    The Parties' Arbitration Agreement Is Not Illusory

Klein does not contest the district court's conclusion that the parties' agreement is neither procedurally nor substantively unconscionable.  Instead, he argues for the first time on appeal that the arbitration provision is unenforceable because it is illusory.  Like Klein's other new arguments, this argument should be ignored.  *Compare* AOB at 36-42 *with* Klein Opp'n to Mot. to Dismiss, Dist. Ct. Dkt. No. 29 at 15-25 (failing to raise argument in briefing) *and* A. 199-206 (failing to raise argument at hearing).  *See also Robinson*, 560 F.3d at 242 ("Absent exceptional circumstances, … we do not consider issues raised for the first time on appeal.").  Even if the Court reaches this contention, however, it likewise fails on the merits.

Klein argues that the arbitration agreement is illusory because Verizon retained the right to modify the service agreement in the future, and the agreement

only would be enforceable to the extent it is interpreted not to apply to claims pre-dating the agreement.  *See* AOB at 36-42.  His arguments are contrary to Fourth Circuit precedent as well as the FAA and should be rejected.

(a)    *Both Klein and Verizon Agreed to Be Bound By the Arbitration Agreement, Rendering It Not Illusory*

To the extent that Klein contends that Verizon's retention of the power to modify the service agreement renders the arbitration provision illusory, this Court has squarely rejected it.  In *American General Life & Accident Insurance Co. v. Wood*, 429 F.3d 83 (4th Cir. 2005) the Court rejected a plaintiff's claim that the arbitration agreement at issue was illusory because his employer, AGLA, could amend or discontinue its arbitration program in the future.  *Wood* concluded that "AGLA's promise to be bound to arbitration is *a fortiori* adequate consideration because no consideration is required above and beyond the agreement to be bound by the arbitration process[.]" *Wood*, 429 F.3d at 91 n.5 (internal quotation marks and brackets omitted); *see also Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543-544 (4th Cir. 2005) (enforcing arbitration agreement even though the employer's policy allowed employer to modify it).

As in this Court's decision in *Wood*, here the arbitration provision is not illusory because both Verizon and Klein agreed to be bound by its terms.  *See* A. 89; *Wood*, 429 F.3d at 91 n.5.  Verizon was obligated to provide notice of any proposed modification, *id*., and Klein (like any other consumer) was only bound by

43

any revisions upon receiving notice and accepting the proposed modification. *See* A. 89; *see also, e.g.*, *Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 (3d Cir. 2002) (employee's right to notice of material changes rendered contract not illusory). Thus, the facts in this case are distinguishable from the unilateral revisions at issue in the authorities cited by Klein. *See, e.g.*, *Morrison*, 517 F.3d at 250 (employees had agreed, in advance, to be bound by rules their employer could "amend[] … from time to time"); *Carey*, 669 F.3d at 204 (employer had the unilateral "right to revise, delete, and add to the employee handbook"); *Dumais*, 299 F.3d at 1219 (concerning one party's unilateral, "unfettered right" to amend the arbitration agreement).

### (b)    The Federal Arbitration Act Forecloses Klein's Arguments

Although *Wood* concerned an agreement that was limited in application to prospective disputes, general contract law principles and the FAA are fundamentally at odds with the out-of-circuit authorities holding that an arbitration agreement would be illusory if modifications were permitted to apply to accrued claims. *See e.g.*, *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202 (5th Cir. 2008); *Peleg v. Nieman Marcus Group, Inc.*, 204 Cal. App. 4th 1425 (Cal. Ct. App. 2012) (cited in AOB at 37).[4] These cases start from the premise that an agreement

---

[4] Klein also cites to this Court's decision in *Hooters of America v. Phillips*, 173 F.3d 933, 938-39 (4th Cir. 1999). That decision has little bearing on this case. The

to arbitrate must be mutual in order to be enforceable. Even where the arbitration provision by its terms obligates both parties, these courts reason that mutuality is lacking – or, stated another way, the obligation is illusory – if one party could modify the provision in an unfettered way. Thus, these courts have found that an implied limitation that the modification would apply only prospectively must be read into the contract in order to save the agreement from being illusory or lacking in mutuality. *See e.g.*, *Peleg*, 204 Cal. App. 4th at 1464-66.

The fundamental error in this reasoning is its starting point, namely, the assumption that the obligation to arbitrate must be mutual. Under ordinary contract law principles, as long as the contract is supported by sufficient consideration, the contract is valid regardless of whether there is perfect symmetry of obligations. The Restatement, for example, notes that "if the requirement of consideration is met, there is no additional requirement of . . . (c) mutuality of obligation." Restatement (Second) of Contracts § 79 (1979). As stated by the Second Circuit Court of Appeals:

> If there is consideration for the entire agreement that is
> sufficient; the consideration supports the arbitration
> option, as it does every other obligation in the agreement

---

court found that the arbitration agreement at issue in *Hooters* was unconscionable in numerous respects, including because the employer had "promulgat[ed] rules so egregiously unfair as to constitute a complete default of its contractual obligation to draft arbitration rules and to do so in good faith." *Hooters*, 173 F.3d at 938-39. The 2012 TOS contain no comparable provisions.

> . . . Since it is settled that the validity of an arbitration
> agreement is to be determined by the law applicable to
> contracts generally . . . there is no reason for a different
> mutuality rule in arbitration cases.

*Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438, 451-452 (2d Cir. 1995) (*quoting*

*Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 137 (1989).)  Because the

overall contract was supported by adequate consideration, the Second Circuit held

that the arbitration agreement was enforceable even though one of the parties had

access to judicial process not granted to the other.   *Id.*  Numerous courts have

reached the same conclusion, holding that the promise to arbitrate did not require

consideration separate and apart from the entire contract and therefore mutuality

was not required.  *See e.g.*, *Wilson Elec. Contractors, Inc. v. Minnotte Contracting

Corp.*, 878 F.2d 167, 168 (6th Cir. 1989); *Barker v. Golf U.S.A., Inc.*, 154 F.3d

788, 792 (8th Cir. 1998) ("mutuality of obligation is not required for arbitration

clauses so long as the contract as a whole is supported by consideration.").

   In this case, the arbitration provision is part of a larger, comprehensive set of

obligations governing Verizon's provision of HSI service to Klein.  Verizon agreed

to provide service, to maintain confidentiality of Klein's information, and to send

accurate and timely bills, among other specified promises that serve as

consideration for Klein's obligations, which include the obligation to arbitrate all

disputes, past and present, relating to his service.  Klein does not contend that the

contract as a whole lacks sufficient consideration.  Klein's obligation to arbitrate is

46

thus supported by consideration and, as a result, it is enforceable under general contract law principles even if the arbitration provision had not applied at all to Verizon (which, in fact, it does). *Cf. Peleg*, 120 Cal. App. 4th at 1450-51 (acknowledging that "when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration" for the promise to arbitrate, such that the arbitration provision is not illusory) (quoting *In re AdvancePCS Health LP*, 172 S.W.3d 603, 607 (Tex. 2005).)  *A fortiori*, Klein cannot avoid his obligation to arbitrate on the ground that Verizon has the right to modify the contract in a way that would apply to existing claims.

The Court should follow the generally applicable contract rules that dispense with mutuality.  The contrary rule asserted by Klein would run afoul of the FAA's mandate that state law grounds for voiding a contract cannot be "applied in a fashion that disfavors arbitration."  *AT&T Mobility, LLC. v. Concepcion*, 131 S.Ct. 1740, 1747 (2010).  A doctrine that requires mutuality of obligation for arbitration agreements or uses the requirement of mutuality as a basis for limiting modifications to prospective disputes singles out arbitration agreements as a class for disfavored treatment and cannot be sustained under *Concepcion*.  *See id.*

4.    **The Arbitration Provision Falls Within the Scope of Modifications Contemplated By the Parties' Prior Agreements**

Klein briefly argues that the arbitration provision in the 2012 TOS is invalid because it exceeds the scope of modifications permitted by the parties' prior contracts. *See* AOB at 42-43. This argument is at odds with the facts. The parties' prior agreements included provisions related to dispute resolution, forum selection, and choice of law principles. Thus, the 2012 TOS did not add new provisions out of whole cloth, as Klein suggests, but instead properly modified these pre-existing terms.

A party may add an arbitration clause to a contract so long as the clause directly relates to the obligations set forth in the parties' original contract and is not "entirely new." *See, e.g.*, *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 796 (1998). In *Badie*, the court held that an arbitration provision could not be added where the original contract had been entirely silent regarding dispute resolution. *Id.*; *see also Myer*, 2001 WL 965063, at *5 (finding that arbitration provision could not be added because the headings in the prior agreement, which did not relate to dispute resolution or forum selection, failed to "foreshadow[]" the addition of an arbitration provision); *Perry*, 2004 WL 1508518, at *4 (rejecting addition of arbitration clause because the parties' initial contract "did not include any mention of arbitration or any other forum for dispute resolution").

48

Unlike the agreement at issue in *Badie* or Klein's other authorities, here the 2010 TOS and 2011 TOS included express, plain-language provisions related to dispute resolution, forum selection, and choice of law principles. *See* A. 33 (§ 15.4); A. 45 (§ 15.4). This difference is dispositive because Klein's authorities are premised on the omission of any dispute resolution provision in the parties' prior agreements. By contrast, where, as here, the original agreement contains a term addressing dispute resolution, a modification of the contract may revise that term to include an arbitration provision. *See, e.g.*, *Filho v. Safra Nat'l Bank of N.Y.*, 2011 WL 2118729 (S.D.N.Y. May 25, 2011), *vacated on other grounds*, 2012 WL 3023805 (2d Cir. July 25, 2012).

Verizon and Klein's agreements have always contained dispute resolution provisions. The 2010 TOS – which Klein agrees he accepted, *see* A. 18 – required i) that all disputes be litigated pursuant to Virginia law; ii) that the parties consent to exclusive jurisdiction in Virginia; iii) that the parties consent to venue in Virginia; and iv) that all claims be commenced within one year after the claim arises. *See* A. 33 (§ 15.4). The 2011 TOS contains these same provisions. *See* A. 45 (§ 15.4). These pre-existing provisions addressed both the method and the forum for dispute resolution – the two elements found lacking in the *Badie* agreement. The 2012 TOS amended these pre-existing provisions by changing the type of dispute procedures the parties agree to use and designating Klein's home

49

state, instead of Virginia, as the appropriate forum.  *See* A. 102 (§ 15.4).  The

parties' prior agreements permitted these modifications, *see*, *e.g.*, A. 30 (§ 3)

(describing modification process), and Klein accepted them by continuing to use

Verizon's services after he received and opened Verizon's email notice.

Because the parties' agreements have always contained a dispute resolution

clause, Klein's attempt to characterize the arbitration agreement as a "new" term is

unavailing.

### 5.    Klein's Brief Service Interruption Did Not Terminate the Parties' Agreement as Klein Contends

Klein contends that he is not bound to arbitrate because he claims that the

parties terminated their agreement in March 2011 when Verizon briefly terminated

his HSI service.  *See* AOB 43-44; *See also* A. 157-58 (describing one day-long

service termination).  But Klein confuses a *service* termination with a *contract*

termination.  As discussed *supra* Section V.B.2, the parties maintained a

continuous contractual relationship once Klein initiated his subscription to HSI and

voice services in 2010.

Klein's single authority purportedly to the contrary concerns two contracts

that each related to different services.  *See Frognet*, 2006 WL 2373265, at *4

(concerning separate contracts for DSL and high-speed private line services).

*Frognet* offers no support for Klein's contention that his brief service interruption

terminated his agreement with Verizon.

### 6. Klein's Effort to Limit the Arbitration Provision to "This Agreement" Ignores the Plain Language of the Arbitration Provision

Finally, Klein argues that the arbitration provision does not apply to this case because the arbitration provision applies to disputes arising under "this Agreement." See AOB at 44-48. Yet, the parties agreed to arbitrate not only disputes arising under "this Agreement," but also – in the very same sentence – "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF … ANY EQUIPMENT, PRODUCTS AND SERVICES [A CUSTOMER] RECEIVE[S] FROM [VERIZON]." A. 104 (§ 18.1). Klein's complaint raises a "dispute" that "relates to" and "arises out of" the Verizon HSI services he received. As a result, whether the parties' dispute concerns "this Agreement" is beside the point.

As discussed in Section V.A, *supra*, courts presented with such broad arbitration clauses requiring the arbitration of "any dispute" consistently find that such clauses apply to disputes arising under prior contracts. *See*, *e.g., Levin*, 634 F.3d at 267 (applying an arbitration clause covering "any dispute" retroactively); *Zink*, 13 F.3d at 332 (same); *Nanosolutions, LLC*, 793 F. Supp. 2d at 46 (same). Broad arbitration clauses like the one at issue here cannot be limited to disputes arising under "this Agreement" because, by their terms, these clauses extend beyond the reach of the present agreement. Klein and Verizon agreed to arbitrate

not only any dispute that arises out of "this Agreement" *but also* any dispute that relates to or arises out of equipment, products, and services.  A. 104 (§ 18.1).  To limit the arbitration agreement to only disputes arising out of the 2012 TOS would render the latter portion of the parties' arbitration agreement meaningless, which of course the Court should not do.  *See, e.g.*, *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1157 (4th Cir. 1992).

Klein suggests that the court should disregard *Levin* and similar authorities in favor of a grammatical argument that an arbitration clause phrased in the present tense cannot apply to past conduct.  This argument is unpersuasive because the arbitration clause references "any dispute" – an expansive phrase the Fourth Circuit has concluded applies to "any disputes, past and present."  *See Levin*, 634 F.3d at 267.  Furthermore, "the present tense is far more versatile than [Plaintiff] would have it" and may apply to actions "past, present and future."  *United States v. Balint*, 201 F.3d 928, 933 (7th Cir. 2000).[5]

Finally, Klein's claim that any ambiguity in the temporal scope of the arbitration provision should be construed against its drafter is meritless.  "Where

---

[5] Klein includes a related footnote arguing that the integration clause in the 2012 TOS should be ignored.  See AOB at 44 n.3.  Contrary to Klein's out-of-circuit authorities, this Court held in *Levin* that where an agreement specifically states that it supersedes all prior agreements, "any dispute" in the arbitration clause must be read to mean any dispute under both the present and prior agreements.  *See Levin*, 634 F.3d at 267.

52

the federal policy favoring arbitration is in tension with the tenet of contra proferentem … the federal policy favoring arbitration trumps[.]" *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 382 n.14 (1st Cir. 2011) (internal citations omitted).  If the Court concludes that the retroactive reach of the arbitration provision is ambiguous, the Supreme Court mandates that such "doubts … should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see also Peabody Holding Co., LLC*, 665 F.3d at 104, 106 (an arbitration agreement "must" be enforced "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted disputed") (internal quotation marks omitted).

In sum, the parties' arbitration agreement applies to the present dispute and should be enforced according to its terms.

## <u>CONCLUSION</u>

For the foregoing reasons, the judgment should be reversed with respect to the denial of Verizon's motion to dismiss for lack of subject matter jurisdiction.  In the alternative, if the Court concludes that it has jurisdiction, the judgment should be affirmed in all other respects.

53

This the 6th day of October, 2014

/s/ Joshua D. Davey
Joshua D. Davey
MCGUIREWOODS LLP
201 N. Tryon Street
Suite 3000
Charlotte, North Carolina 28202
Phone: 704.343.2167
Fax: 704.805.5019
E-mail: jdavey@mcguirewoods.com

Sean F. Murphy
MCGUIREWOODS LLP
1750 Tysons Boulevard
Suite 1800
Tysons Corner, Virginia 22102-4215
Phone: 703.712.5487
Fax: 703.712.5243
E-mail: sfmurphy@mcguirewoods.com

Hojoon Hwang
Laura K. Lin
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105
Telephone:   415.512.4000
Facsimile:    415.512.4077
Email: Hojoon.Hwang@mto.com
Email: Laura.Lin@mto.com

Counsel for Verizon Communications, Inc.,
Verizon Online LLC, Verizon Online-
Maryland LLC

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. _____          Caption: _____

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ ]    this brief contains _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ ]    this brief has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; **or**

    [ ]    this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s)_____

Attorney for_____

Dated:_____

## CERTIFICATE OF SERVICE

I certify that on October 6, 2014 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

This the 6th day of October, 2014

/s/ Joshua D. Davey
*Attorney for Defendants-Appellees*